PIGG et al. v. CASPER CO., Inc.

(Circuit Court of Appeals, Fourth Circuit. May 11, 1912.)

No. 1,076.

1. FRAUDULENT CONVEYANCES (§ 172*) — RIGHTS OF PARTIES — RELIEF IN EQUITY.

Equity will not, at the suit of a grantor, set aside a deed executed by him with intent to defraud his creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 523–529, 542; Dec. Dig. § 172.*]

2. FRAUDULENT CONVEYANCES (§ 193*) — REMEDY IN EQUITY — PURCHASERS FROM GRANTEE.

Where a corporation conveyed its property with intent to defraud its creditors, and subsequently its stock passed to third persons with knowledge of the conveyance, and who assumed obligations growing out of the conveyance, equity would not set aside the conveyance.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 605–607; Dec. Dig. § 193.*]

Appeal from the Circuit Court of the United States for the Western District of Virginia, at Abingdon.

Suit by the Casper Company, Incorporated, against T. N. Angle and others. From a decree for complainant, defendant J. H. Pigg, trustee, and another, appeal. Reversed.

This is a suit in equity instituted on the 22d day of February, 1909, in the Circuit Court of the United States for the Western District of Virginia. The plaintiff alleges in its bill: That it acquired title to a certain tract of land on the 21st day of May, 1906, a copy of which is filed as Exhibit 1, and that on the 1st day of June, 1906, it acquired another parcel of real estate from Patrick H. Thrash, shown by his deed of the same date, a copy of which was filed with the bill as Exhibit 2. Upon these properties the complainant erected a distillery plant, rectifying plant, warehouses, residences, etc., of great value. That on the 12th day of February, 1908, the then president and secretary of the said Casper Company, Inc., undertook to convey and did execute a deed purporting to convey all of said real estate, with a very small exception shown in the deed, to one T. M. Angle, a citizen of the state of North Carolina, the consideration of said deed being $15,000. It is further alleged that said consideration was never paid to the complainant, nor was any other sum ever paid as a consideration for said deed but that the same was wholly fictitious; that the sale was never authorized by the directors or the stockholders of the complainant company. It is further alleged that the deed was unauthorized and wholly without consideration and executed in fraud of the rights of stockholders and creditors of the company, and that the deed constitutes a cloud upon the title to the property embraced therein; that on the 26th day of February, 1908, the said T. M. Angle, with full knowledge that he had no right or title to the property in controversy, other than a constructive trustee for the complainant, undertook to execute and did execute a deed of trust upon the property to J. H. Pigg, as trustee for the benefit of his wife, Rada Pigg, to secure to her a note of $30,000, the greater part, if not all, of which is fictitious, not representing any real consideration or money due Rada Pigg, and that, even if it did, the deed of trust was in no wise for the benefit of the complainant company, etc.; that T. M. Angle in accepting the first-named deed of bargain and sale became a constructive trustee, and as such was bound to hold the legal title for the benefit of complainants, and that his attempt to mortgage this property for his benefit was in fraud of the stockholders and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

creditors; that, unless the trustee is enjoined, he will on the 27th day of February, 1909, proceed to advertise the property for sale to satisfy the alleged deed of trust. It is further alleged that the complainant is a corporation organized and doing business in the Western District of Virginia, at Roanoke, Va., and that T. M. Angle is a citizen of North Carolina, that J. H. Pigg and Rada Pigg are citizens of the state of Texas, residing at El Paso, and that the real estate involved is situate at Roanoke, Va.

The defendant T. M. Angle filed a plea in which it was averred (a) that said Angle was a citizen of the state of Virginia, and therefore the court was without jurisdiction; (b) that the deed of February 12, 1908, executed by the Casper Company to him, was executed for a valuable consideration, and that the execution of the said deed was duly authorized by the directors and stockholders of the said Casper Company, and that the deed of trust from respondent to J. H. Pigg to secure Rada Pigg was not fraudulent and the debt therein secured was not fictitious as alleged in the bill.

The defendant J. H. Pigg filed two pleas to the jurisdiction of the court— one, that C. F. Hagan was an indispensable party and had not been made such by the bill, and the second asserting that he, Pigg, was a citizen of Virginia, and not of Texas.

On July 14, 1909, the complainant filed an amendment to its bill making C. F. Hagan a party to the suit. On October 15, 1909, a demurrer was filed by T. M. Angle. The various pleas and the demurrer were overruled. The defendants then answered on the merits, denying, among other things, that the deed was unauthorized, and alleging: That the deed of trust to Mrs. Pigg was fraudulent, and that the suit was to secure a valid debt due from respondent to Mrs. Rada Pigg, and, that while the transactions by which a portion of the real estate of the Casper Company was conveyed to T. M. Angle did not take the form of any formal recorded action, it was known and authorized by the board of directors, and was consented and agreed to by all the then stockholders of the company, who never have complained and do not now complain of the transaction. That the conveyance of the real estate was not intended to invest him with absolute title to the same, but merely to enable him to acquire and secure the loan, and it was fully understood and agreed that T. M. Angle held the legal title to said land for the use and benefit of the said Casper Company. In order to save the Casper Company harmless, the respondent expected to repay the money secured by said deed of trust when due, but before the same became due, in May, 1908, Angle, acting for the owners of the stock of the Casper Company, sold 60 per cent. of the same to C. F. Hagan, T. J. Kain, and ·G. H. Simpson, who as a "part of the consideration of their purchase expressly agreed and bound themselves to pay the amount secured by said deed of trust when the same should fall due. * * *" That it was expressly understood and agreed that Hagan should take title to the same subject to the deed of trust, and to be conveyed to the company when he and his associates should pay the liens assumed by them hereon, including the Pigg lien. That Hagan, Kain, and Simpson upon their purchase aforesaid "were placed in full control of the property, real and personal, of the Casper Company. That they have failed and refused to pay anything on their purchase except the sum of about $3,000, and, after remaining in possession and control of all the assets and property of the Casper Company until February, 1908, they brought suit to rescind the contract with respondent, and, in order to assist them in their unjust and inequitable claim, instituted and are attempting to prosecute this suit in the name of the Casper Company, which they are enabled to do by reason of control obtained over the affairs of the corporation as holders of a majority of the stock."

On July 4, 1910, a decree was entered setting aside and canceling the deed of conveyance to T. M. Angle, dated February 12, 1908, and the deed of trust from Angle for the benefit of Rada Pigg, dated February 26, 1908, and making perpetual a restraining order theretofore issued by which J. H. Pigg, trustee, and Rada Pigg were perpetually enjoined from selling under, or otherwise enforcing the deed of trust in question. On September 10, 1910, petition for a rehearing was filed, and the same was granted. On the 10th day of August, 1911, the court again entered its final decree, setting aside the deeds in question; and it is from that decree that this appeal was taken.

E. W. Saunders, of Rocky Mount, Va., and R. I. Overbey, of Chatham, Va., for appellants.

J. S. Ashworth, of Bristol, Tenn., for appellee.

Before PRITCHARD, Circuit Judge, and DAYTON and ROSE, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). There are a number of assignments of error, some of which relate to the question of jurisdiction and others to the failure of the court below to grant the motion to dismiss complainant's bill and dissolve the injunction theretofore granted. We are of the opinion that the assignments of error which relate to the question of jurisdiction are without merit.

[1, 2] The sixth assignment of error is in the following language:

"That the said court erred in holding that the complainants were entitled to the relief prayed for in the bill, in entertaining the same, in enjoining J. H. Pigg, trustee, from selling under the deed of trust from T. M. Angle, and in vacating and setting aside the deed from the Casper Company, Inc., to T. M. Angle and of T. M. Angle to J. H. Pigg, trustee for Rada Pigg."

This assignment raises the question as to whether the complainant in this action, under the circumstances, is entitled to the relief which it seeks, and this also involves the further question as to whether the complainant is entitled in a court of equity to have a deed vacated upon the ground of fraud in which it participated, as appears from the allegations of the bill. Relief in a suit of this character will not be granted where it appears (as it does in this instance) that the complainant was an active participant in the fraudulent conduct upon which it bases its suit. The bill filed herein seeks to set aside a certain conveyance of real estate alleged to have been made by the Casper Company without valid consideration and with intent to defraud its creditors or a creditor, to wit, the United States government; and, while it is sought to cancel a deed made to the defendants upon the ground that it was made with the intent to defraud the government, yet the government is not a party to this suit.

As we have stated, the bill was filed by the corporation itself. Ordinarily a fraudulent grantor cannot maintain a bill to set aside his own fraudulent act. However, it is insisted by counsel for complainant that this bill can be maintained because since the conveyance was made the stock of the company has passed into other hands than those which held the stock at the time the conveyance was made. This position is untenable, in that the present stockholders became such with full knowledge that the conveyance had been made. It appears, among other things, that as a part of the purchase price they agreed to pay for the stock they assumed certain obligations growing out of the conveyance which they now seek to set aside. That stockholders can sometimes file a bill of complaint to set aside a conveyance of property owned by a corporation in fraud of its creditors and in fraud of the rights of minority stockholders may be true.

However, in the case of Hawes v. Oakland, 104 U. S. 451, 26 L. Ed. 827, the fifth syllabus is in the following language:

"It must also be made to appear that the complainant made an earnest effort to obtain redress at the hands of the directors and shareholders of the corporation, and that the ownership of the stock was vested in him at the time of the transactions of which he complains, or was thereafter transferred to him by operation of law."

It appears that the present stockholders of the Casper Company who are now using the corporate name to set aside the conveyance in question became stockholders since the execution of the deed which they now ask to vacate, and that they did not acquire the right which they now seek to assert by operation of law.

We are of opinion that the bill cannot be maintained and that the same should be dismissed, without prejudice to the rights of any creditors of the corporation, prior or subsequent, to attack the conveyance as in fraud of their rights and without prejudice to any right of the present stockholders of the company either at law or in equity to seek redress for any fraud or deceit which may have been practiced upon them by the vendors of the stock.

For the reasons stated, the decree of the lower court is reversed.

Reversed.