SARAH MARTHA BROOKS, Defendant in Error, vs. ALBERT R. BROOKS, Plaintiff in Error.

*Opinion filed October 24, 1916.*

1. MARRIED WOMEN—*common law was in force as to married women's property prior to the act of 1861.* Prior to the Married Women's act of 1861 the common law as to married women's property was in force, and at common law money of the wife in her possession at the time of the marriage became the property of the husband, and also all choses in action reduced to possession after the marriage.

2. SAME—*effect, at common law, of purchase of realty by husband with wife's money.* At common law, where the husband purchased and paid for land with money belonging to the wife at the time of marriage and took the title in his own name, the land belonged to the husband and no trust resulted in favor of the wife.

3. SAME—*when equity will recognize waiver of marital rights by husband.* Equity will recognize a waiver or relinquishment by the husband of his marital rights, but the evidence must be of unequivocal acts showing an intention of the husband to relinquish his rights and create a separate estate for the wife.

4. SAME—*what evidence not sufficient to prove waiver of marital rights by husband.* Proof that land was bought in 1850 with the wife's money and that the husband so admitted will not support a claim that the husband waived or relinquished the right the common law gave him to the money and the right to invest it for his own uses and purposes.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding.

SAMUEL NAYLOR, for plaintiff in error.

LOUIS H. HANNA, and CHARLES E. LAUDER, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Sarah M. Brooks, complainant in the court below and who is defendant in error here, filed her bill to the January term, 1914, of the circuit court of Warren county, alleging she was the owner in fee of lots 1, 2, 3, 4, 5 and 6 in the

subdivision of the north half of the southwest quarter of
section 25, and of lot 3, consisting of nine and one-half
acres in the northwest corner of the southeast quarter of
section 25, all in township 11, north, range 2, west of the
fourth principal meridian, in Warren county, Illinois; that
she derived title to said land by good and sufficient deed of
conveyance from Chapman V. Brooks on August 10, 1896,
who acquired his title by *mesne* conveyances from the gov-
ernment of the United States. The bill alleged complain-
ant was, and had been since acquiring her title, in actual
possession of the land; that she had paid all the taxes
thereon, and that she and her predecessors in title had been
in open, notorious, hostile, adverse, continuous, exclusive
and unbroken possession of said land and had paid all taxes
thereon from the time the title was derived from the gov-
ernment, in 1818. The bill alleged defendant Albert R.
Brooks, contriving to cloud and slander the title of com-
plainant and depreciate the value, on the 18th of August,
1911, executed and filed for record in the recorder's office
of Warren county an instrument in which he alleged he
was the owner in fee of the undivided one-fifth of said
land as son and one of the heirs-at-law of Jane M. Brooks,
deceased; that said instrument further stated that although
the title of record was at one time in the name of Chapman
V. Brooks, he held it in trust for his wife, Jane M. Brooks,
and at her death the equitable title descended to and vested
in her heirs. The bill alleged that at the time Chapman
V. Brooks conveyed the land to complainant, August 10,
1896, he was the owner of the legal and equitable title, and
that Jane M. Brooks never had any legal or equitable in-
terest in or title to said land. Jane M. Brooks died in 1863,
leaving surviving her a husband, Chapman V. Brooks, and
four sons and a daughter, her only heirs-at-law. One of
the sons has since died leaving children. All of said par-
ties were made defendants to the bill, which prayed that
the instrument dated August 18, 1911, and filed for rec-

ord by Albert R. Brooks, be decreed to be void and of no effect and canceled and set aside as a cloud upon the title of complainant; that the defendants, and each of them, be adjudged and decreed to have no title to or interest in the land.

Albert R. Brooks, plaintiff in error here, and one of his brothers, answered the bill, denying its allegations of title and ownership of the land in complainant. They also filed a cross-bill, alleging that in 1850 Peter Butler executed a deed to the land in controversy to Chapman V. Brooks for the consideration of $1600; that the consideration was paid the grantor by Jane M. Brooks out of money in her possession which belonged to her as her separate estate and property, free from the control, dominion and ownership of her husband, Chapman V. Brooks, whereby a trust resulted by operation of law in favor of Jane M. Brooks, and Chapman V. Brooks became seized of the legal title in trust for Jane M. Brooks, who was in equity the owner of the fee, and upon her death, intestate, the land descended to and vested in her heirs, and the deed from Chapman V. Brooks to complainant in the original bill, who was his second wife, was ineffective to convey title to her.

After issues were joined upon the bill and cross-bill by filing answers and replication, the cause was referred to the master in chancery to take the testimony and report conclusions. After taking the testimony the master reported that complainant was entitled to the relief prayed in the original bill and that the cross-bill should be dismissed for want of equity. Exceptions to the master's report were overruled by the chancellor and a decree entered granting the relief sought in the original bill and dismissing the cross-bill. Albert R. Brooks has sued out this writ of error to review that decree.

Chapman V. and Jane M. Brooks were married in Pennsylvania in 1850. The same year they came to this State

to make their home, and in September, 1850, a deed was made by Peter Butler to Chapman V. Brooks for 160 acres of land, of which the land here in controversy is a part, for the expressed consideration of $1600. Jane M. Brooks died in 1863, leaving a husband and children surviving her. The surviving husband, Chapman V. Brooks, married complainant in the original bill in 1896 and the same year made her a deed to the land in controversy, under which deed she claims to own the land in fee.

It is not conceded by the defendant in error that Jane M. Brooks paid the consideration for the purchase of the 160 acres of land from Peter Butler in 1850, but it is insisted if she paid anything the amount she paid did not exceed $1000. That amount of money was bequeathed her by her father, James Weakley, to be paid to her when she became twenty-one years old. Her father died in Pennsylvania in 1831 and his will was admitted to probate that year. Jane M. Weakley became twenty-one years old about nine years before her marriage to Chapman V. Brooks, in 1850. The proof of oral declarations made by Chapman V. Brooks many years ago tended to show that $1000, or the greater part of that sum, paid in acquiring title to the 160 acres, was money Mrs. Brooks received from her father's estate.

It is insisted by defendant in error that even if the land was purchased with money Jane M. Brooks received from her father's estate, no trust resulted by operation of law, for the reason that under the common law in force in this State in 1850 all personal property of the wife in possession became the property of the husband, with absolute right to control or dispose of it as he might wish. It is indisputable that prior to the passage by the legislature of this State of the Married Women's act of 1861 the common law upon this subject was in force and that at common law money of the wife in possession at the time of the marriage became the property of the husband, also all

choses in action reduced to possession after the marriage, (*Cookson* v. *Toole,* 59 Ill. 515; *Jassoy* v. *Delius,* 65 id. 469;) and that where the husband purchased and paid for land with money thus acquired and took the title in his own name, the land belonged to the husband and no trust resulted in favor of the wife. (*Erringdale* v. *Riggs,* 148 Ill. 403; *Keith* v. *Miller,* 174 id. 64; *Hogue* v. *Steel,* 207 id. 340.) There is nothing in this case to take it out of the rule announced in the above cases. It is true, as insisted by plaintiff in error, that equity would recognize a waiver or relinquishment by the husband of his marital rights, but it is also true that the evidence must be of unequivocal acts showing an intention of the husband to relinquish his rights and create a separate estate for the wife. (21 Cyc. 1161, 1172; *Jackson* v. *Jackson,* 91 U. S. 122.) The evidence in this record falls far short of showing any such relinquishment of his rights, or intention to relinquish them, by Chapman V. Brooks. The most that can be claimed for the evidence is that it shows $1000 of money Jane M. Brooks received from her father's estate went to pay for the land. The money was not set apart for the separate use of the wife, to the exclusion of her husband's common law rights, by the will through which she received the money, or by any other instrument or in any other manner. The gift by her father's will was of $1000, to be paid her when she became twenty-one years old. No other condition was attached to the gift, and the husband's common law rights attached to the money in the possession of the wife at and after the marriage. There is no proof of any kind tending to show a waiver or relinquishment by Chapman V. Brooks of his marital right to his wife's money. Proof that the land was bought with her money, and that the husband had so admitted, does not support the claim that the husband had waived or relinquished the right the law gave him to the money and the right to invest it for his own uses and purposes. The law announced in

*Thomas* v. *City of Chicago,* 55 Ill. 403, *Erringdale* v. *Riggs,* · . *supra,* and *Keith* v. *Miller, supra,* applies to and must govern the decision of this case.

The decree of the circuit court is supported by the law and is affirmed.
                                        *Decree affirmed.*