CORA JONES, A MARRIED WOMAN, BY H. E. STAFFORD, HER NEXT FRIEND, AND CORA JONES, APPEARING INDIVIDUALLY FOR A SPECIAL PURPOSE, *v.* J. W. JONES AND LUCILLE MAY PLATTS.

No. 1825.

Argued August 28, 1928.            Decided September 14, 1928.

Perry, C. J., Parsons, J., and Circuit Judge Watson in place of Banks, J., disqualified.

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity for the cancellation of a deed. The main allegation of the bill of complaint as finally amended is as follows: "That on the 15th day of April, 1925, said Cora Jones" (the petitioner) "was absent from the Territory of Hawaii, being then in the State of California, to the knowledge of respondent J. W. Jones, her husband aforesaid" (one of the respondents), "and to the knowledge of Lucille May Platts" (the other respondent); "that at said time said J. W. Jones was in possession of a power of attorney theretofore executed by said Cora Jones to him, said J. W. Jones, at a time several years prior thereto and intended to be used, as said respondent well knew, only during a temporary absence from the Territory at said previous time contemplated; that on said 15th day of April, 1925, acting in furtherance of a fraudulent conspiracy then undertaken between said J. W. Jones and said Lucille May Platts to defraud said Cora Jones of her said property and to deprive her of said property and/or of the value thereof, respondent J. W. Jones at a time when he had pending a suit for divorce against said Cora Jones and at a time when he well knew and when respondent Lucille May Platts well knew that in equity said power of attorney was no longer active and for the sole purpose of perpetrating a fraud upon said Cora Jones, did convey said lands by means of a deed then and there executed by him, said J. W. Jones, to the respondent Lucille May Platts; that said deed was executed in fraud of the rights of said Cora Jones and not in furtherance of the powers intended to be conveyed in said power of attorney and in fact at a time when in equity and in justice said

power of attorney was no longer operative between the parties thereto".

In their answers the respondents expressly admitted the making of the conveyance as alleged in the bill, but claimed that it was made for the consideration of $7500, passing from the respondent Platts to the respondent J. W. Jones, and that the respondent Platts was an innocent purchaser for value. In addition the respondent Jones claimed in his answer that the property conveyed was his own; that the complainant had no interest or right therein "other than the right or rights given her as the lawful wife of this respondent"; and that the title to the property had been taken in the name of the complainant "for the convenience of said Cora Jones and this respondent, said Cora Jones at all times recognizing and stating that the respondent J. W. Jones was the owner of said property and entitled to the possession thereof". After hearing the testimony of the complainant and of the two respondents, as well as that of other witnesses, the trial judge found the facts in favor of the petitioner and entered a decree canceling the deed. From that decree the case comes to this court by appeal.

The deed in question is a conveyance from Cora Jones, the complainant, joined in by her husband, J. W. Jones, one of the respondents, by way of showing his assent thereto, to Lucille May Platts, the other respondent, was dated and executed April 15, 1925, and related to a piece of land with a dwelling thereon situate on Pacific Heights in this city and theretofore occupied for many years by the complainant and her husband as their home. The property was acquired on May 6, 1910, by a deed of that date in which "Cora Jones, wife of J. W. Jones," was named as the sole grantee, the consideration named in the deed being $3125. The purchase price was paid by J. W. Jones, the respondent, out of moneys received by him from the sale

of stocks. Two main issues of fact were presented at the trial, one being whether the circumstances surrounding the taking of this deed of May 6, 1910, were such as to create a resulting trust in favor of the respondent J. W. Jones or, on the other hand, were such as to leave the transaction an absolute conveyance to Cora Jones, as upon its face it appeared to be; and the second being whether the conveyance of April 15, 1925, was to an innocent purchaser in good faith and for a valuable consideration or was executed and received in bad faith and as a method of defrauding the complainant of her property. Upon these issues much evidence was adduced by both sides. The trial judge, in a lengthy opinion, said *inter alia:* "At the outset I deem it proper to state that the court is seriously hampered in this case by the inferior quality of the testimony of the three principal witnesses. That of Mr. Jones is so evasive, misleading, and above all so highly improbable, that much of it is regarded as untrue. That of Mrs. Platts is so full of animus, colored, refuted even by her own testimony, garbled and fantastic, that it is worthy of and is given little weight. That of Mrs. Jones is given little consideration. Whether she intentionally misled the court or is suffering mentally from long worry in this case I am unable to determine, but the court does find that so many of her statements were later proved by her own admissions to be untrue, that it is compelled to disregard her testimony except when corroborated. Untrue testimony, whether from design, mistake or disease, remains untrue and worthless."

The determination of the main issues of fact resting entirely upon testimony of witnesses as distinguished from documentary evidence, the case is peculiarly one falling within the rule well established in this jurisdiction that ordinarily great weight will be given to the findings of fact made by the trial judge and that his views as to

the credibility of the witnesses will not be disturbed except for very good cause. This consideration alone would require us to sustain the findings of the trial judge upon the disputed issues. We do not hesitate to say, however, that a careful examination of the transcript of evidence leads irresistibly to the conclusion that the trial judge was correct in his findings of fact and in the comments which he made relating to the credibility of the witnesses.

That the title to the property in question was in the complainant wife and not in the respondent husband was proven *prima facie* by the introduction of the deed of May 6, 1910. The payment of the purchase price having been by the husband, the presumption is that the placing of the title in the wife was by way of a gift from the husband, since it was his duty to provide for her. *Jackson* v. *Jackson,* 91 U. S. 122, 125. This was a presumption not of law but of fact and was rebuttable. The husband claimed that the transaction did not constitute a gift, but that it was intended by both husband and wife that the true ownership should be in the husband and that the title be placed in the name of the wife only as a matter of "convenience". The burden of establishing this resulting trust was upon the party relying upon it, in this instance the husband. 30 C. J. 704. The proof offered in this respect consisted largely of his own testimony and, that having been found to be utterly unreliable, a finding in his favor cannot be based upon it. The proof of a resulting trust, it is well settled, should be clear, cogent and convincing; but without resort to that rule it cannot be said that the creation of the trust was proven, even by a preponderance of the evidence. The fact that the wife gave to the husband two days before the date of the deed of May 6, 1910, a power of attorney to deal with the property could have been perhaps considered as an item of evidence

in support of the theory of a trust if there had been credible testimony in further support of the claim. Standing alone, it cannot have that effect. It is more than rebutted by the fact that in the deed of April 15, 1925, prepared by the respondent Jones, or under his supervision, the property was represented to be that of the wife and contained the usual covenants of warranty that the title was in her. If the respondent Jones believed that the whole equitable title was in himself, a conveyance from himself (either by the same or a separate instrument) would have been necessary for the protection of the grantee Mrs. Platts. There was other evidence tending to show that a resulting trust was not intended by the parties, as, for example, the memorandum prepared by the respondent Jones, or at his direction, containing a statement in effect that the Pacific Heights property belonged to Mrs. Jones,—a memorandum, too, prepared at a time when the husband and the wife were dealing with each other at arms' length and through attorneys and used by them in negotiations (through their attorneys) in an attempt to agree upon a division between them of their several pieces or items of property in view of the accepted fact that they could no longer live together as husband and wife.

In argument on behalf of the respondent Jones it is claimed that the wife and the husband were owners of the property in equal shares, either as joint tenants or as tenants in common; and in support of this claim are exhibited a lease dated December 30, 1922, in which the husband and wife are named as co-lessors and are referred to as tenants in common and a document dated April 14, 1919, signed by the wife, in which she says that "the property on Pacific Heights standing in my name is the joint property of J. W. Jones and myself, having been purchased in my name with proceeds from the sale of Mr. Jones' Oahu Sugar Company stock". There is no

evidence whatever in the case tending to show the creation between the parties of either a joint tenancy or a tenancy in common. The deed of May 6, 1910, was to Cora Jones alone. The fact that the purchase price was paid by the husband might result under some circumstances, if they had existed, in creating a resulting trust in favor of the husband, but this would have been a trust as to the whole property and not merely as to a half interest in it. The above quoted statement in the paper of April 14, 1919, is an erroneous assertion made, doubtless, to aid the husband in making a sufficient showing of financial ability at a time when the bank was demanding such a showing. The reason given upon its face that the land was "purchased in my name with proceeds from the sale of Mr. Jones' Oahu Sugar Company stock" does not support the theory of a joint tenancy. So, also, the fact that both the husband and the wife were named as co-lessors in the lease cannot operate to create a tenancy in common that otherwise had no existence. It was simply an erroneous joinder of a party who had no title.

It is contended by the respondents that the doctrine that he who comes into equity must come with clean hands operates in this case to prevent recovery by the complainant because, as it is claimed, her testimony was false in important particulars. But this maxim has its limitations. It was formulated and is applied by courts in order to effectuate justice, not injustice. "It will not be allowed to work injustice and wrong". 21 C. J. 187. And "one does not always forfeit a right fairly acquired by subsequent misconduct connected therewith". *Ib.*, 188. It being clear that the property belonged to the petitioner and that its transfer by one of the respondents to the other was fraudulent, it would not serve any equitable purpose to deny to complainant the relief to which she is entitled merely because some of her testimony was false,

if it was. Moreover, the trial judge did not find that Mrs. Jones intentionally misled the court. He said that he could not determine whether she did so or whether her erroneous answers were due to her "suffering mentally from long worry". In reaching his conclusions of fact he did not rely upon her testimony "except when corroborated".

We concur in the finding that there was no resulting trust and that the title was wholly in Mrs. Jones. We concur also in the finding that the purchase price of $7500 named in the deed of April 15, 1925, was wholly fictitious; that Mrs. Platts, the grantee, had knowledge of the fact that at the date of the deed the respondent Jones was suing his wife for a divorce, no longer had her confidence and in equity should not exercise any power of attorney which he might have theretofore received from her; that she was not an innocent purchaser for value and that the transaction was fraudulent.

It is contended by the respondents that the trial court should not have permitted the filing of the bill in its last amended form, the ground of the objection being that the bill as last amended states a cause of action different from that which was stated in the bill in its next preceding form. Assuming that the cause of action thus stated is different from that stated in the earlier form of bill, that of itself does not show that the ruling was erroneous. Our statute of amendments (Sec. 2360, R. L. 1925,) is liberal. It provides that "whenever a plaintiff in an action shall have mistaken the form of action suited to his claim, the court or judge, on motion, shall permit amendments to be made on such terms as it or he shall adjudge reasonable; and the court or judge may, in furtherance of justice and on the like terms, at the trial or on appeal, or at any other stage, before or after judgment, allow any petition or pleading or process or pro-

ceeding to be amended by adding or striking out the name of any party * * * or by inserting other allegations material to the case, or, when the amendment does not substantially change the claim or defense, by conforming the pleadings or the proceeding to the facts proved." The qualification, "when the amendment does not substantially change the claim or defense", applies only in cases where it is sought to conform the pleadings to the facts proved. The reason is obvious. In such cases, the trial having ended or being in progress, the opposite party might conceivably be seriously prejudiced by an amendment substantially changing the claim or the defense. But this reason does not apply when the amendment is made *in limine* before the trial has commenced and, as in the case at bar, before the parties are even at issue. The opposite party in the latter case receives the same degree of notice by the filing of the amended declaration or petition which he would receive in the event of the institution of an entirely new suit. Certainly no prejudice resulted to the respondents from the allowance of the amendment.

The decree appealed from is affirmed.

*C. A. Gregory* (*Ulrich & Hite* with him on the brief) for petitioner.

*E. H. Beebe* (*Thompson, Cathcart, Beebe & Winn* on the briefs) for respondents.